HERALD COMPANY v CITY OF BAY CITY

Docket No. 200187. Submitted January 6, 1998, at Lansing. Decided February 24, 1998, at 9:10 A.M. Leave to appeal sought.

The Herald Company brought an action in the Bay Circuit Court against the city of Bay City, Bay City Manager Bruce McCandless, and others, alleging that the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, was violated when the city manager conducted private interviews of finalists for the position of Bay City fire chief before recommending one candidate who was then selected by the Bay City Commission and that the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, was violated when the city denied the plaintiff's request for information about the finalists' names, current job titles, places of residence, and ages. The court, William J. Caprathe, J., upon the parties' motions for summary disposition, entered a judgment in favor of the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred in summarily dismissing the OMA claim. The OMA provides that a public body, when making a decision effectuating public policy, must make the decision at a meeting open to the public, unless there is an applicable exception. MCL 15.263(1),(2),(3); MSA 4.1800(13)(1),(2),(3). Here, where the city charter provided that the city commission shall appoint the fire chief on the recommendation of the city manager, the city manager and the city commission together constituted a public body within the meaning of the OMA with respect to the process used in selecting the fire chief. Regardless of whether the interviews in this case were meetings, the OMA requires that all interviews by a public body for employment or appointment to a public office be held in an open meeting. MCL 15.268(f); MSA 4.1800(18)(f). The interviews conducted by the city manager should have been made in one or more open meetings. The OMA also applies where, as in this case, a public body interviews candidates and greatly reduces their number for the purpose of recommending the employment of one candidate. Decisions made by the city manager in setting hiring criteria, reviewing applications, and narrowing the field of candidates after interviews were decisions subject to the OMA. Finally, none of the exceptions provided by the OMA applied to this case.

2. The trial court erred in ruling that the defendants raised adequate defenses to the FOIA claim. The matter must be remanded for a determination whether the plaintiff's request for information would require the defendants to create a new document, something that the FOIA generally does not require. The exception provided by the FOIA for information of a personal nature whose disclosure would constitute an invasion of privacy, MCL 15.243(1)(a); MSA 4.1801(13)(1)(a), as raised by the defendants, does not apply. The fact that a person is to be, or has been, interviewed for a high-level public position is not information of a "personal nature" and its disclosure does not constitute an unwarranted invasion of privacy. Any privacy concerns are outweighed by the public's interest in knowing the qualifications of candidates under consideration.

Reversed and remanded.

1. STATUTES — OPEN MEETINGS ACT.

The Open Meetings Act requires a public body making a decision effectuating public policy to make the decision at a meeting open to the public, unless an exception provided by the act applies (MCL 15.263[1],[2],[3]; MSA 4.1800[13][1],[2],[3]).

2. STATUTES — OPEN MEETINGS ACT — APPOINTMENTS OF MUNICIPAL OFFICIALS.

A city manager and a city commission comprise a public body that is subject to the requirements of the Open Meetings Act when they act pursuant to a city charter that provides that appointments of certain officials by the city commission are to be made as recommended by the city manager; decisions by the city manager concerning hiring criteria, review of applications, and winnowing and interviews of applicants must be made in compliance with the Open Meetings Act (MCL 15.261 *et seq.*; MSA 4.1800[11] *et seq.*).

3. STATUTES — OPEN MEETINGS ACT — APPOINTMENTS TO PUBLIC OFFICE.

All interviews by a public body for employment or appointment to a public office must be held in an open meeting (MCL 15.268[f]; MSA 4.1800[18][f]).

4. RECORDS — FREEDOM OF INFORMATION ACT — NEW DOCUMENTS.

The Freedom of Information Act generally does not require a public agency to create a new document in response to a request for information (MCL 15.231 *et seq.*; MSA 4.1801[1] *et seq.*).

5. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS — INVASION OF PRIVACY.

The name, current employment, place of residence, and age of an applicant for a high-level public employment position are not exempt from disclosure under the Freedom of Information Act as

information whose disclosure would constitute an unwarranted invasion of privacy (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

*Braun Kendrick Finkbeiner P.L.C.* (by *Scott C. Strattard*), for the plaintiff.

*Allsopp, Kolka & Wackerly, P.C.* (by *Mark A. Kolka*), for the defendants.

Amici Curiae:

*Miller, Canfield, Paddock and Stone* (by *Don M. Schmidt*), for Michigan Municipal League Legal Defense Fund.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett* and *C. F. Boyle, Jr.*), for Public Corporation Law Section, State Bar of Michigan.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

O'CONNELL, J. Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) for failure to state a claim under the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, and the trial court's finding that defendants did not violate the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* With respect to the FOIA claim, plaintiff specifically appeals the denial of plaintiff's motion for summary disposition under MCR 2.116(C)(9). We reverse.

This matter requires this Court to resolve two separate issues. The first concerns Bay City's failure to hold open meetings and open interviews of candidates for the position of fire chief in violation of the OMA. Plaintiff, The Herald Company, doing business as

the Bay City Times, argues that the procedure defendants employed when selecting a new fire chief violated the OMA because the city manager and his committee interviewed and screened applicants and then, pursuant to the city charter, the city manager recommended a candidate who was summarily appointed by the city commission. The second issue relates to an FOIA request made by plaintiff concerning records relating to the city's search for a new fire chief. Plaintiff specifically requested information pertaining to the seven semifinal candidates; defendants denied the request. On appeal, plaintiff alleges that defendants failed to state a valid defense under the FOIA. We conclude that defendants violated both the OMA and the FOIA and reverse the trial court's decision.

I

The first issue for our resolution necessitates interpretation of the OMA. Plaintiff argues that defendants improperly interviewed and screened job applicants for the position of fire chief at closed meetings, thus effectively appointing the new Bay City fire chief in violation of the OMA. The Bay City Charter provides that the city commission shall appoint a fire chief "on the recommendation of the city manager." In exercise of his duties under the charter,[1] the city manager, defendant Bruce McCandless, established a commit-

---

[1] Article VI, § 4 provides that the city manager shall be the "chief executive officer and the head of the administrative branch of the city government." Pursuant to this article, the city manager is responsible for "the proper administration of all affairs of the city." Paragraph g further provides that the city manager shall recommend to the city commission "for adoption such measures as he may deem necessary or expedient." Finally, Article IX, § 2 provides that the city manager shall have the "general charge, care and supervision of the several departments of the city government and shall exercise all the executive and administrative powers

tee of five people [2] to assist him in finding a candidate whom he could recommend to the city commission. McCandless informed the city commission of the newly formed committee in a letter dated May 16, 1996. The committee helped establish hiring criteria, solicited, screened, and interviewed applicants, and advised McCandless regarding whom he should recommend for the position.

The committee screened approximately thirty-four applications and narrowed the pool to nine semifinalists. Of these, two voluntarily withdrew. The committee interviewed the seven candidates and then advised McCandless about which three candidates deserved second interviews. McCandless conducted second interviews with the three finalists; the defendants admittedly did not post notice of these interviews and conducted them in private.

On May 6, 1996, plaintiff submitted an FOIA request to defendants, asking for the "names, current job titles, cities of residence, and ages of the seven final candidates for the job of Bay City Fire Chief." On May 13, 1996, the city attorney sent a letter to plaintiff denying the request and noting, among other reasons, that the material represented intercommittee deliberations and that it was specifically exempted from disclosure by the OMA. On May 16, McCandless wrote the city commission, advising them of his recommendation for the fire chief position; McCandless recom-

connected therewith not imposed by this Charter upon some other official."

[2] The members of the committee were defendants Jacob Hutter (city commissioner), Bruce Wagner (personnel director), Tom Rhine (member of the firefighters union), Boyd Boettger (retired firefighter), and Howard Asch (the head of the city code enforcement department).

mended the appointment of Bay City assistant fire chief and acting chief Gary Mueller. Plaintiff's attorney sent another letter to the city attorney on the following day. The letter renewed the FOIA request and took exception to the closed interviews. Defendants did not respond to this letter. On June 3, 1996, in an open meeting, after proper notice, the city commission deliberated and decided to appoint Mueller to the fire chief position.

Plaintiff then filed a complaint alleging that defendants' actions were in violation of the OMA as well as the FOIA. In its allegations charging that defendants violated the OMA, plaintiff claimed that the city manager and his committee were acting as "public bodies" because they were authorized to exercise governmental authority in selecting a new fire chief. Plaintiff also alleged that the interviews constituted "meetings" under the OMA and that the city therefore should have made the meetings open to the public. The trial court ruled that defendants were not a public body under the OMA and granted defendants' MCR 2.116(C)(8) motion for summary disposition. We review the trial court's determination de novo, *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 525; 540 NW2d 748 (1995), and reverse.

The OMA provides that a public body, when making a decision effectuating public policy, must make the decision at an open meeting, unless there is an applicable exception. MCL 15.263(1), (2), and (3); MSA 4.1800(13)(1), (2), and (3). Therefore, in order to resolve this issue, we must determine (1) whether the city manager acted as a "public body," (2) whether there was a "meeting" of a public body, (3) whether a

"decision" effectuating public policy was made by the city manager, and (4) whether any statutory exceptions are applicable. In making these determinations, we note that the "fundamental purpose" of statutory construction is to "assist the court in discovering and giving effect to the intent of the Legislature." *In re Certified Question*, 433 Mich 710, 722; 449 NW2d 660 (1989). In order to effectuate the legislative intent regarding the OMA—facilitating public access to governmental decision making—the statute should be broadly interpreted and its exemptions strictly construed. *Booth Newspapers, Inc v Univ of Michigan Board of Regents*, 444 Mich 211, 223; 507 NW2d 422 (1993). A public body has the burden of proving that an exception exists. *Booth Newspapers, supra.*

### A. PUBLIC BODIES

The OMA defines the term "public body" to include a "board, commission, committee, subcommittee, authority, or council, which is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function . . . ." MCL 15.262(a); MSA 4.1800(12)(a). Thus, "a key determination of the OMA's applicability is whether the body in question exercises governmental or proprietary authority." *Booth Newspapers, supra* at 225. If an entity is a public body, its meetings (except those falling within a statutory exception) must be open to the public and held in a place available to the general public. MCL 15.263(1); MSA 4.1800(13)(1). Similarly, its decisions must be made at a meeting open to the public, and all deliberations of a quorum of the public body must take place at a meeting open

to the public. MCL 15.263(2) and (3); MSA 4.1800(13)(2) and (3).

Defendants argue that the city manager is not a public body and that the city commission is the "only legislative or governing body, public body, subject to the Open Meetings Act." Defendants also assert that if the city manager is a public body for one purpose, then the city manager is a public body for all purposes. Essentially, defendants contend that a ruling for plaintiff in this case constitutes a ruling that the city manager is a "public body" subject to the OMA in all of his official acts. We disagree.

We begin our analysis with a consideration of *Booth, supra.* There, Regent Paul W. Brown served as chairman of a Presidential Search Committee (PSC) that consisted of the eight members of the University of Michigan Board of Regents. *Booth, supra* at 215. Regent Brown took certain actions in making a "first cut" of candidates for president of the university, narrowing the number of candidates from 250 to 70. *Id.* at 216. The Court noted that Brown's "first cut" decision was largely an arithmetic function rather than a matter of judgment. *Id.* at 217. The Court went on, citing *Goode v Dep't of Social Services*, 143 Mich App 756; 373 NW2d 210 (1985), to state:

> The Legislature did not grant any exception to specific types or forms of committees. Therefore, delegating the task of choosing a public university president to a one-man committee, such as Regent Brown, would warrant the finding that this one-man task force was in fact a public body. As the *Goode* Court observed, "[w]e do not find the question of whether a multi-member panel or a single person presides to be dispositive. Such a distinction carries with it the potential for undermining the Open Meetings Act . . . ." *Id.,* 143 Mich App 759.

Therefore, we hold that the selection of a public university president constitutes the exercise of governmental authority, regardless of whether such authority was exercised by Regent Brown, the nominating committee, the full board, or even subcommittees. Accordingly, this individual or these entities must be deemed "public bodies" within the scope of the OMA. [*Booth, supra* at 226.]

Here, arguably, the Bay City Charter effectively delegates the function of selecting the fire chief to the city manager.[3] If this is the case, then the situation here is a mirror of that in *Booth;*[4] just as Regent Brown arguably exercised governmental or proprietary authority in *Booth* when he made the "first cut," here McCandless arguably exercised governmental or proprietary authority when he conducted interviews and selected one candidate from a field of seven and thereafter "recommended" acting chief Mueller.

---

[3] Article VII, § 1 provides that the city commission shall appoint the clerk, treasurer, comptroller, assessor, deputy assessor, and attorney. Article VII, § 1 also provides that *on the recommendation of the city manager* the city commission shall appoint the chief of police, *fire chief,* superintendent of electric light, superintendent of waterworks, engineer, street commissioner, superintendent of parks, and superintendent of bridges. Arguably therefore, when appointing the fire chief the city commission is performing only a ministerial act in that, again arguably, the city commission *must* appoint as fire chief the person that the city manager recommends.

[4] The trial court in this case attempted to distinguish *Booth* by noting that the city manager chose his committee, whereas in *Booth* the nominating committee was chosen by the board. The trial court also noted that four of the five committee members in the present case were not city commissioners, whereas the committee in *Booth* consisted entirely of members of the board. This analysis misses the point. The trial court should have focused on the authority delegated to the *city manager* rather than the authority exercised by his committee. The *city manager* conducted the interviews and selected one candidate from a field of seven. The *city manager,* as chief executive officer and head of the administrative branch of the city government (see n 1, *infra*), is clearly part of the "local legislative body" and, in exercising the powers delegated to him in the city charter, is bound by the OMA to conduct open interviews.

This proposition is, however, only arguable. Even if McCandless did *not* constitute a public body when he took these actions, it is beyond question that the Bay City Charter requires the city commission and the city manager *together* to appoint a fire chief. If this is so, it is equally certain that the city commission and the city manager *together* constituted a governing body that is a public body under the OMA.[5]

In this regard, we find this Court's decision in *Menominee Co Taxpayers Alliance, Inc v Menominee Co Clerk*, 139 Mich App 814; 362 NW2d 871 (1984), to be particularly instructive. In *Menominee*, the Menominee County treasurer resigned from office effective November 7, 1983. *Id.* at 816. Pursuant to MCL 168.209; MSA 6.1209, as in effect at the time, the county clerk, the prosecutor, and the probate judge "came together to appoint a suitable person to replace the former Menominee County treasurer."[6] *Menominee, supra* at 816. These three officials met

---

[5] In reaching this conclusion, we find it unnecessary to analyze the actions of the city manager's committee. It is sufficient to our analysis that the city commission and the city manager together acted under color of governmental authority and that his actions were in violation of the OMA.

[6] MCL 168.209(2); MSA 6.1209(2), as in effect at the time of this Court's decision in *Menominee*, provided:

> If the vacancy shall be in any other county office [other than county clerk or prosecuting attorney], either elective or appointive, the presiding or senior judge of probate, the county clerk and the prosecuting attorney shall appoint some suitable person to fill such vacancy.

The current version of MCL 168.209(2); MSA 6.1209(2) is substantially the same:

> If the vacancy is in any other county office, the presiding or senior judge of probate, the county clerk, and the prosecuting attorney shall appoint a suitable person to fill the vacancy.

together on a single occasion where they considered the appointment in private without the discussion being open to the public. *Id.* at 816-817. A central issue in that case was whether the three officials acting in this capacity constituted a "public body" under the OMA. This Court concluded that, when these officials came together to fill a vacancy in a county office, they constituted a public body:

> Defendants claim that they are nothing more than an *ad hoc, pro tem* group which is neither a "legislative or governing body," and thus are not subject to the mandates of § 3(1). We agree that defendants in their collective capacity are not a "legislative body." However, we disagree that they are not "a governing body." Under the statute creating them they are empowered, and in fact required, to perform a governmental function. What could be more obviously governmental than the appointment of a treasurer? . . .
>
> Accordingly, on this issue of first impression, we hold that the county prosecutor, county clerk, and senior probate judge constitute a "public body" for purposes of the Open Meetings Act when those individuals come together pursuant to MCL 168.209(2); MSA 6.1209(2) for the purpose of filling a vacancy in a county office. [*Id.* at 818-819.]

As we note above, the relative power of the city commission and the city manager under Article VII, § 1 of the Bay City Charter in selecting a fire chief may be arguable. However, the important point here is that, as with the appointment of the county treasurer in *Menominee*, the city commission and the city manager are specifically required by law to act together in appointing a fire chief. In light of *Menominee*, we conclude that the city commission and the city manager together constituted a governing body that is a public body under the OMA when they were acting

toward their governmental function of appointing a fire chief.

This conclusion avoids the problems raised by defendants when they assert that, if a city manager is a public body for *one* purpose, then the city manager must be a public body for *all* purposes. Amicus Curiae, the Public Corporation Law Section of the State Bar of Michigan, takes this argument to its ultimate conclusion when it observes:

> As disastrous as reversal will be for the City of Bay City, your Amicus Curiae must observe that it speaks for virtually hundreds of municipal entities whose method of conducting the People's business will be adversely affected by that reversal. Taken to its logical extreme, Plaintiff's position suggests that every meeting of two or more public servants would be subject to OMA requirements. Such was not the purpose of the legislation under discussion. City Charters, much like Federal Constitutions, are amended at the ballot box—not on the newspaper editor's note pad. Plaintiff's remedy is to persuade the voters to amend the Charter or expand the scheme of the OMA.

We do not today require that every meeting of two or more public servants must be subject to requirements of the OMA, and we do not regard this to be the law. While the city manager *may*, under *Booth*, have been a single-person committee and therefore a "public body" when he conducted interviews, selected one candidate, and "recommended" that candidate to the city commission, this Court need not reach this question. Rather, under the narrow facts of this case, we conclude that the city manager and the city commission *together* constituted a public body.

The OMA does not state that interviews conducted by a public body for employment or appointment to a

public office must be conducted by a quorum of the public body; it states that *all* interviews must be open. Thus, the fact that a quorum — or even a single member — of the city commission was not present when McCandless conducted the interviews and selected one candidate is not dispositive. Rather these interviews should have been open because the city manager and the city commission together constituted a public body that, under § 18(f) of the OMA, MCL 15.268(f); MSA 4.1800(18)(f), as then in effect, was required to open its meetings to the public. See *Booth, supra* at 231: "[T]here is no statutory exception permitting a subcommittee to conduct closed interviews. On the contrary, the Legislature expressly mandated open interviews."

### B. MEETINGS

The second step in our analysis requires a determination regarding whether the city manager's private interviews with potential candidates constitute "meetings" under the OMA. The OMA defines a "meeting" as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy." MCL 15.262(b); MSA 4.1800(12)(b). The trial court in this case determined that the interviews were not "meetings" because the city commissioners did not "meet privately for the purpose of deliberating toward or rendering a decision on a public policy." The trial court's finding ignores the fact that the OMA also provides that all interviews conducted by a public body for employment or appointment to a public office must be open to the public. MCL 15.268(f); MSA 4.1800(18)(f). The OMA's mandate with regard to open

interviews does not state that the interviews must be conducted by a quorum of the public body; it states that *all* interviews must be open. See *Booth, supra* at 231. It is undisputed that McCandless interviewed and screened candidates and set hiring criteria, and that such interviews and screenings were done in private. These actions constituted decisions regarding public policy. Thus, the interviews conducted by McCandless should have been conducted at one or more open meetings pursuant to the OMA.

C. DECISIONS

MCL 15.262(d); MSA 4.1800(12)(d) defines a "decision" as

> a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy.

Defendants assert, as did the trial court in this case[7] and the board in *Booth*, that the decisions of the city manager were not "decisions" as defined in the OMA because the possibility existed that the city commission might choose to disregard the city manager's recommendation. Defendants argue that the city manager and his committee were not empowered to perform any governmental function of the city

---

[7] The trial court in this case quoted at length from OAG, 1977-1978, No. 5183, p 21 (March 8, 1977), for the proposition that the Legislature did not intend to subject strictly advisory committees to the OMA. However, the opinion is not precedentially binding, *Oakland Prosecutor v Dep't of Corrections*, 199 Mich App 681, 691; 503 NW2d 465 (1993).In any event, here the city manager did not act in a strictly advisory manner, but performed decision-making functions, under the OMA, by narrowing the field of candidates.

commission because "[t]o do so would violate the Bay City Charter." We disagree. The Supreme Court in *Booth* specifically noted that the OMA's definition of "decision" does not contain a "voting requirement" and that actions directed toward consensus building constitute "decisions" within the meaning of the OMA. *Booth, supra* at 229.

This issue was also addressed by this Court in its recent decision in *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 221 Mich App 103, 117; 561 NW2d 433 (1997). The facts in *Federated Publications* are similar to those in *Booth*; the Michigan State University Board of Trustees appointed a committee (the Presidential Selection Committee [PSC]) to review applications, conduct interviews, and reduce the field of presidential candidates. *Federated Publications, supra* at 106. Except for the ultimate authority to appoint the university president, the trustees gave the PSC the same powers and functions held by the board of trustees, the public body. Although the PSC's decisions were nonbinding, the Court noted that this is a distinction without a difference. *Id.* at 117-118. The Court concluded that the PSC violated the OMA when it conducted closed interviews and that the reduction of the number of candidates constituted "decisions" within the meaning of the act, despite the nonbinding nature of the reductions:

> The trial court erred in finding that the narrowing of the field of candidates for the position was a ministerial function. Perhaps if the PSC had only reviewed applications to determine if the candidates met some minimum standards, its work would have been ministerial in nature. However, the PSC did not limit its activities in such a way. Instead, it reviewed and studied the candidates and reduced greatly the number to be considered by the whole board. The par-

ties agree that the original number of candidates was reduced from more than 150 to eventually four. The actions taken in such a winnowing process were more than ministerial in nature and constituted a "decision" under the OMA. [*Id.* at 115.]

Therefore, according to this Court's decision in *Federated Publications*, if a public body interviews candidates and greatly reduces the number of candidates for the purpose of recommending the employment of a single individual, the process is subject to the OMA.

In the present case, it is undisputed that the city manager made actual decisions that reduced the number of candidates for the fire chief position. The city manager set hiring criteria, reviewed applications, and narrowed the field of candidates after conducting private interviews of the seven semifinalists. In *Federated Publications, supra*, this Court found such tasks to be decisions under the OMA. Furthermore, whether the city commission could later revisit any such reduction decisions is irrelevant to our analysis. To the extent that the Bay City Charter permits the city manager to interview, screen, and recommend candidates for a high-level municipal position without conducting such interviews in open meeting, the procedural operation of the charter circumvents the OMA. Defendants' argument places form over substance by noting that only the city commission was vested with the authority to appoint where, in fact, the city manager's nomination was effectively the appointment.[8] This Court's failure to recognize this fact would effec-

---

[8] Defendants have not been able to cite a single instance in which the city manager's recommendation has not been supported by the city commission. We find this quite revealing given the fact that the Bay City Charter has been in operation since 1921.

tively undermine the legislative intent behind the OMA: the promotion of a responsible and open government. See *Booth, supra* at 229.

### D. EXCEPTIONS

Deliberations by a quorum of a public body's members may be held behind closed doors only if the purpose of the meeting fits within one of the statutory exceptions.[9] MCL 15.268; MSA 4.1800(18). Section 8(f) of the OMA, MCL 15.268(f); MSA 4.1800(18)(f), as in effect at the time of the violations in this case,[10] allowed a closed meeting "to review the specific contents of an application for employment or appointment to a public office" if confidentiality is requested by the person being reviewed.[11] This section also pro-

---

[9] This statement is also subject to the provisions in MCL 15.263(7)-(11); MSA 4.1800(13)(7)-(11) (though these provisions are inapplicable to the present case).

[10] MCL 15.268(f); MSA 4.1800(18)(f) has been amended, effective December 26, 1996, to provide:

> A public body may meet in a closed session only for the following purposes:
>
> \*     \*     \*
>
> (f) To review and consider the contents of an application for employment or appointment to a public office if the candidate requests that the application remain confidential. However, except as otherwise provided in this subdivision, all interviews by a public body for employment or appointment to a public office shall be held in an open meeting pursuant to this act. This subdivision does not apply to a public office described in subdivision (j).

Subdivision j, added by the 1996 amendment, concerns the selection of a president for an institution of higher learning and, thus, would be inapplicable to the present case.

[11] Closed meetings may be held in connection with a limited number of additional purposes: considering a periodic personnel evaluation if requested by the person being reviewed, MCL 15.268(a); MSA 4.1800(18)(a), considering whether to dismiss a student if the student requests a closed meeting, MCL 15.268(b); MSA 4.1800(18)(b), formulating

vides that "all interviews by a public body for employment or appointment to a public office shall be held in an open meeting . . . ." Therefore, according to section 8(f), the candidate reduction decisions at issue in this case should have been made in public; the OMA has no statutory exception that would permit a municipal public body to conduct closed interviews. See *Federated Publications, supra* at 118. Because the city manager conducted private interviews of potential finalists, and because there was no showing by defendant that all the applications reviewed by the city manager were of candidates who requested confidentiality, these interviews were in violation of MCL 15.268(f); MSA 4.1800(18)(f).

In summary, under the facts of this case, the city manager, acting together with the city commission, constituted a public body that violated the OMA by conducting private interviews of the seven semifinal candidates for the position of fire chief, by conducting private interviews of the three final candidates, and by cutting the field to one candidate before making a recommendation to the city commission. These actions constitute an exercise of governmental authority. Therefore, this Court finds that the city commission and the city manager violated the OMA.

---

negotiation strategies connected with the negotiations of collective bargaining agreements, MCL 15.268(c); MSA 4.1800(18)(c), a meeting that addresses the purchase of real estate, MCL 15.268(d); MSA 4.1800(18)(d), consulting with an attorney reviewing trial strategy, MCL 15.268(e); MSA 4.1800(18)(e), partisan caucuses, MCL 15.268(g); MSA 4.1800(18)(g), considering material that is exempted by statute, MCL 15.268(h); MSA 4.1800(18)(h), and selecting a president for an institution of higher learning, MCL 15.268(j); MSA 4.1800(18)(j).

II

Plaintiff's next argument on appeal is that defendants violated the FOIA by refusing to disclose public records containing information regarding the seven final candidates interviewed for the position of Bay City fire chief. Plaintiff specifically argues that the trial court improperly denied plaintiff's motion challenging the FOIA defenses asserted by defendants in their answer to plaintiff's complaint. We agree.

The FOIA requires public disclosure of information regarding the formal acts of public officials and employees if such information is not specifically exempted from disclosure under the act. See *Booth, supra* at 231-232. A major purpose of the FOIA is to enable the general public to obtain full and complete information regarding governmental decision making. MCL 15.231(2); MSA 4.1801(1)(2). In accordance with this purpose, a party claiming that material is exempt from disclosure has the burden of proving the applicability of a particular exemption. *Kincaid v Dep't of Corrections*, 180 Mich App 176, 182; 446 NW2d 604 (1989). Items that a public body may exempt from disclosure are listed in § 13(1) of the FOIA, MCL 15.243(1); MSA 4.1801(13)(1). As this Court has repeatedly noted, the exemptions are to be narrowly construed. See *Oakland Co Prosecutor v Dep't of Corrections*, 222 Mich App 654, 657; 564 NW2d 922 (1997). Additionally, the burden of proving the need for an exemption rests on the public body asserting its application. *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991).

In the instant case, plaintiff submitted an FOIA request to the city on May 6, 1996, seeking the names, current job titles, cities of residence, and ages of the

seven final candidates for the position of fire chief. The city denied plaintiff's request by letter dated May 13, 1996. A number of reasons were given for the denial of plaintiff's request, including: (1) that the FOIA did not require the city to "create a record" containing the information, and (2) that the requested information was "information of a personal nature" under § 13(1)(a), disclosure of which would constitute "a clearly unwarranted invasion of an individual's privacy." Our examination of the case law and the underlying facts of this case leads us to conclude that defendants' arguments are without merit.

Defendants first contend that plaintiff did not request any specific documents and that the city is not required to create a record containing the information demanded by plaintiff. While the FOIA generally does not require the creation of a new document,[12] it also does not require the requesting party to name a specific document. Rather, the act only requires that an FOIA request identify documents "sufficiently to enable the public body to find the public record." MCL 15.233(1); MSA 4.1801(3)(1). Given that a requesting party is not privy to a listing of all documents related to the selection-and-appointment process, one cannot realistically expect that party to name the specific documents for which it seeks disclosure. In the present case, plaintiff requested the names, current job titles, cities of residence, and ages

---

[12] At the time of plaintiff's FOIA request, MCL 15.233(3); MSA 4.1801(3)(3) provided that "[t]his act does not require a public body to make a compilation, summary, or report of information, except as required in section 11 [MCL 15.241; MSA 4.1801(11). ]" The same language is now codified in MCL 15.233(4); MSA 4.1801(3)(4).

of the seven final candidates. We believe that plaintiff sufficiently described the information requested.[13]

Furthermore, we question defendant's outright denial of the existence of documents containing the requested information. Details of the requested information commonly appear on resumes and job applications. In fact, defendants admit that the candidates' employment applications might contain the information that plaintiff requested. Additionally, plaintiff suggests that the information may have been listed on an interview schedule or other document that listed the candidates who were interviewed. Without the benefit of a full and complete record, however, this Court cannot state with certainty that plaintiff's request would not require defendants to "compile a record." Therefore, we direct the trial court, on remand, to allow the necessary discovery and to make an informed factual finding with regard to this issue.

Defendants next argue that the requested information was exempt from disclosure under MCL 15.243(1)(a); MSA 4.1801(13)(1)(a), which provides for the exemption of "[i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." In order for the information to be exempted under this provision, two factors must be established. First, the information sought must be of a "personal nature." *Booth, supra* at 232; *Swickard, supra* at 547. In determining whether the information

---

[13] Defendants cannot use as a subterfuge the excuse that no one document contains all of the requested information. Plaintiff's request for the names of the seven finalists is a reasonable request. Defendants' denial that such a document exists appears to be unreasonable on its face.

is of a personal nature, the "customs, mores, or ordinary views of the community" must be taken into account. *Booth, supra* at 232; *Swickard, supra* at 547. Second, the disclosure of such information must constitute a "clearly unwarranted invasion" of privacy. *Booth, supra; Swickard, supra.*

In this case, the trial court held that "to publicly identify the personal information sought about the seven finalists would constitute an invasion of their right to privacy." The court noted that "vocational decisions, some of which could require geographical changes, are personal and could affect a person's current relationships with his or her job or family." We believe that the trial court erred in making this determination. First, the trial court's decision ignores the fact that the OMA requires some interviews for high-level public positions to be open to the public. See *Booth, supra* at 231. While vocational decisions may be "personal," we read the OMA as a legislative determination that it is in the "greater public interest to know the qualifications of candidates for public positions and the hiring procedures of public officials." *Booth, supra* at 231. Accordingly, we conclude that disclosure of the fact that a particular person is being interviewed for a high-level public position is not information of a "personal nature." Once the list of candidates has been narrowed to those persons who are to be interviewed, the applicant's right of privacy is outweighed by the public's interest in knowing the qualifications of the candidates under consideration.

Second, we believe that the requested information is that which an individual commonly holds out to the public, the release of which would not violate "the customs, mores, or ordinary views of the community."

*Booth, supra* at 232-233. Disclosure of the requested information would not constitute a clearly unwarranted invasion of privacy because nothing of a highly personal nature would be disclosed. Plaintiff's request was reasonable; the information requested would merely have allowed plaintiff to accurately identify the seven semifinal candidates. Moreover, even if the documents did contain personal information, defendants may have been able to separate the confidential information from that requested by plaintiff. As the Michigan Supreme Court noted in *Evening News Ass'n v City of Troy*, 417 Mich 481, 503; 339 NW2d 421 (1983), a public body has a duty to "separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." This could have been done by redacting the employment applications to provide only the requested information that was determined to be nonexempt. Defendants failed to do so. Given the above analysis, we conclude that defendants did not justify the applicability of this exemption.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.