RAMSEY v CITY OF PONTIAC

Docket No. 90066. Submitted March 17, 1987, at Detroit. Decided June 9, 1987.

Michael R. Ramsey, a police officer for the City of Pontiac, brought an action in the Oakland Circuit Court against the City of Pontiac, the Mayor and Chief of Police of the City of Pontiac, the Pontiac Police Officers' Association and the Police Officers' Association of Michigan. The action was based on plaintiff's claim that he was promised a promotion which he did not receive and his allegations that the unions breached certain duties in regard to the filing of grievances in his regard. The trial court, Steven N. Andrews, J., granted motions for summary disposition in regard to all of the defendants and thereafter denied plaintiff's motion for reconsideration and delayed motion for reconsideration, assessing costs of $150 in favor of the unions. Plaintiff appealed.

The Court of Appeals *held:*

1. The unions did not breach their duty of fair representation.

2. The trial court properly assessed costs against plaintiff for filing a delayed motion for rehearing several weeks after the order granting the unions' motion for summary disposition. The motion rules only allow a motion for rehearing to be made within seven days after the entry of the order disposing of the motion and do not provide for delayed motions for rehearing. Plaintiff's motion was frivolous.

3. Plaintiff was properly precluded from pursuing his claim that the collective bargaining agreement was violated, which falls within the exclusive jurisdiction of the Michigan Employment Relations Commission, and plaintiff's factually indistinguishable claims of misrepresentation, intentional infliction of

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 398-403, 1735 *et seq.*

Am Jur 2d, Motions, Rules, and Orders §§ 27, 28.

Settlement of unfair labor practice cases. 14 ALR Fed 25.

Union's liability in damages for refusal or failure to process employee grievance. 34 ALR3d 884.

emotional distress, and promissory estoppel were properly dismissed.

Affirmed.

1. Labor Relations — Unions — Grievances — Fair Representation.

A union breaches its duty of fair representation if its conduct toward a member is arbitrary, discriminatory, or in bad faith; arbitrary conduct is impulsive, irrational, or unreasoned conduct as well as inept conduct undertaken with little care or with indifference to the interests of those affected; the latter proscription includes the failure to exercise discretion when that failure can reasonably be expected to have an adverse effect on any or all union members, and extreme recklessness or gross negligence which can reasonably be expected to have an adverse effect on any or all union members.

2. Motions and Orders — Rehearing.

A motion for rehearing is to be made within seven days after the entry of an order disposing of a motion; the court rules do not provide for delayed motions for rehearing (MCR 2.119[F]).

3. Labor Relations — Employment Relations Commission — Unfair Labor Practices.

Unfair labor practice claims fall within the exclusive jurisdiction of the Michigan Employment Relations Commission (MCL 423.216[a]; MSA 17.455[16][a]).

*Garratt & Morris, P.C.* (by *E. Michael Morris*), for plaintifff.

*Barbier, Petersmarck, Tolleson, Mead & Paige, P.C.* (by *Sharon S. Ireland* and *Christopher G. Manolis*), for the City of Pontiac and the Mayor and Chief of Police of the City of Pontiac.

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga* and *Dirk F. Zuschlag*), for the Pontiac Police Officers' Association and the Police Officers' Association of Michigan.

Before: SHEPHERD, P.J., and J. H. GILLIS and S. J. LATREILLE,* JJ.

PER CURIAM. Plaintiff appeals as of right from the trial court's orders granting summary disposition for defendants and denying plaintiff's motions for rehearing and delayed rehearing. We affirm.

Defendant City of Pontiac employed plaintiff as a police officer. As such, plaintiff was a member of defendant union Police Officers' Association of Michigan and its local affiliate, defendant union Pontiac Police Officers' Association (PPOA). Plaintiff was a recruiting and training officer. Apparently, this position was desirable because plaintiff was only required to work Monday through Friday from 8:00 A.M. to 4:00 P.M.

Plaintiff claims that on June 3, 1982, defendant James Hildebrand, Chief of the Pontiac Police Department, called him into his office and told him that he was promoting four people including plaintiff. Plaintiff agreed to accept the promotion on the condition that he did not have to become a city resident. Apparently, the city and the union were involved in a dispute as to whether officers accepting new positions were required to become city residents. Hildebrand told plaintiff not to worry because "things are in the works." Moreover, Hildebrand indicated that it was his policy to have officers who were being promoted go on road patrol for sixty days so that they could become better acquainted with criminal procedures. Plaintiff agreed to go on road patrol and, therefore, he resigned his job as a recruiting and training officer and transferred to the road patrol. Plaintiff began road patrol on September 19, 1982, and Hildebrand told him that he would be promoted when

* Circuit judge, sitting on the Court of Appeals by assignment.

the new recruits finished their police academy training on approximately November 1.

At the time the promotion was allegedly offered to plaintiff, plaintiff believed that there were five or six available positions. The collective bargaining agreement between the city and the unions provided:

> 11.5: *Eligible Lists - Qualifications.* The names of employees who have qualified in a given promotional examination will be placed on an eligible list. *An eligible list shall remain in force for two years from the date of the last eligible list established* or until the names on the list have been exhausted, whichever occurs first. *At that time, the list will be discarded.*
>
> \* \* \*
>
> C. *Top Three. A promotion may be made from any of the top three (3) names on the promotional list at the discretion of the Chief of Police. Each promotional list shall remain in effect for a period of two (2) years unless sooner exhausted.* A promotional list for each position shall be maintained on a continuous basis so that any existing vacancies may be filled without undue delay.
>
> 11.6: *Positions vacated by retirement, resignation, or death shall be filled from eligible lists within a period of ninety (90) days provided that the Chief of Police shall have the discretion of determining if such vacated position or positions shall be filled.*

The promotion list involved in this case was established on October 19, 1981, and, therefore, it expired on October 19, 1983. Plaintiff was fourth on the promotion list.

As of November 1, 1982, neither plaintiff nor anyone else was promoted. Nonetheless, plaintiff claims that Hildebrand continued to indicate that plaintiff would be promoted at any time by telling

plaintiff "things are in the works" and by asking plaintiff "[have you] got your [detective] suits ready?" Although plaintiff asked Hildebrand at least once a month about his promotion, Hildebrand never gave plaintiff a clear reason for not promoting him.

In January, 1983, Homer Ellsworth, one of the top three candidates on the promotion list, was promoted. Plaintiff then became one of the top three candidates on the promotion list.

In June, 1983, plaintiff met with Neal Craig, president of the PPOA. Plaintiff told Craig of Hildebrand's promotion offer in June of 1982. Craig told plaintiff that he believed plaintiff did not have a legitimate grievance under the bargaining agreement because the decision to fill vacancies from the top three positions on the promotion list was within the chief's discretion. Craig showed plaintiff what Craig believed to be a similar grievance which he had earlier filed and lost. Plaintiff told Craig he believed that his case was different than Craig's. Nevertheless, Craig reiterated his belief that plaintiff did not have a proper grievance under the bargaining agreement.

On July 22, 1983, plaintiff and eight other officers sent a letter to Craig demanding that the union file a grievance against the city "to convince the city that promoting officers" to now-vacant positions would be in the city's best interest. Moreover, plaintiff and the other officers asked the union to file for injunctive relief in the Oakland Circuit Court to "freeze" the present promotion lists.

On August 7, 1983, plaintiff sent a letter to defendant Wallace Holland, Mayor of the City of Pontiac, asking him to fill the vacant positions and explaining Hildebrand's offer. On September 2, 1983, plaintiff sent a letter to Hildebrand stating

that he was filing an individual grievance because the union failed to pursue a grievance on his behalf. Plaintiff's letter suggested that his petition concerned the city's failure to fill vacant positions. By September 13, 1983, plaintiff had already reached the third step of the individualized grievance procedure. On September 13, 1983, Benjamin L. Anderson, director of the personnel department, denied plaintiff's grievance, finding that the city was exercising its right not to fill vacant positions and that the promotion lists would expire on October 19, 1983.

On December 21, 1983, plaintiff filed suit against defendants city, Hildebrand, and Holland. On January 9, 1984, these defendants filed an answer and, as affirmative defenses, alleged that the court lacked subject matter jurisdiction and that plaintiff had failed to exhaust his administrative remedies. On January 26, 1984, plaintiff filed an amended complaint and on March 27, 1984, plaintiff added the unions as defendants. On August 30, 1984, plaintiff filed his second amended complaint, claiming: (1) express breach of contract concerning plaintiff's June 2, 1983, promotion offer, (2) breach of the collective bargaining agreement by defendant unions for allowing the promotion list to expire and for failing to bring a grievance concerning plaintiff's transfer to the road patrol as well as Hildebrand's promise, (3) misrepresentation concerning Hildebrand's promise, (4) promissory estoppel concerning Hildebrand's promise, and (5) intentional infliction of emotional distress concerning Hildebrand's promise.

Defendants filed motions for summary disposition. On September 30, 1985, defendant unions' motion for summary disposition was heard. Defendant unions claimed that there was no genuine issue of material fact as to whether the unions had

breached their duty of fair representation to plaintiff. MCR 2.116(C)(10). Moreover, the unions claimed that plaintiff's complaint was barred by the statute of limitations. MCR 2.116(C)(7). The trial court granted the unions' motion under MCR 2.116(C)(10). First, the trial court noted that the explicit language of the collective bargaining agreement allowed promotions from the top three names on the promotion list only at the chief's discretion and that the agreement allowed the promotion list to remain in effect for only two years. Then, the trial court turned to Craig's grievance which ended when an arbitrator ruled that under the collective bargaining agreement the chief was not required to fill any vacancies. The court then held:

> This Court finds that the union's [PPOA'S] acts which plaintiff complains of do not constitute a breach of duty of fair representation. While plaintiff obviously disagrees with the union's position, this Court finds that the union properly exercised its discretion in deciding whether to proceed with this grievance, and the decision was not unreasonable, arbitrary, discriminatory, or inept, nor was it a gross abuse of discretion.
> Rather, the union official made the decision that, based on the language of the contract and previous experiences with the city's decisions regarding promotions, the plaintiff did not present a viable grievance.

On October 18, 1985, the trial court entered the order granting summary disposition to defendant unions. The court did not reach the issue whether plaintiff's complaint was timely.

On November 5, 1985, the trial court heard the remaining defendants' motion for summary disposition. The remaining defendants claimed that plaintiff's suit was based on a contract entered

outside of the terms of the collective bargaining agreement. To promote plaintiff would be an act outside of the agreement and, under the doctrine of preemption, plaintiff's claim was an unfair labor practice which must first be reviewed by the Michigan Employment Relations Commission. The trial court held:

> The Court notes at the outset that when the question is whether a state administrative agency or a state court has jurisdiction to hear a claim, the doctrine of preemption is inapplicable. Federal preemption is based on the supremacy clause of the United States Constitution and prevents the states from regulating conduct which is "plainly within the central aim of federal regulation because it involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." *Bescoe v Laborers' Union Local No 334,* 98 Mich App 389, 396 [295 NW2d 892] (1980) [lv den 411 Mich 887 (1981)].
>
> In response to defendants' contention that enforcement of the alleged oral agreement between plaintiff and the city's representatives would constitute an unfair labor practice, plaintiff states in his response to motion for summary disposition by City defendants:
> "Officer Ramsey has consistently maintained that, in addition to the fact that no secret or private negotiations occurred, as has been alleged by the defendants in the case at bar, all actions taken by Officer Ramsey were *consistent* with the terms of the collective bargaining agreement. In other words, Officer Ramsey has alleged that his conduct complied with the collective bargaining agreement, but the City breached the collective bargaining agreement."
>
> Article VI of the agreement provides for a four step grievance procedure culminating in arbitration. The rule consistently followed by Michigan courts is that "an employee may not maintain an action against his employer for an alleged breach

of a collective bargaining agreement where the employee has not first exhausted the grievance and arbitration procedures established under the collective bargaining agreement upon which he bases his suit." *Pompey v General Motors Corp,* 385 Mich 537, 560 [189 NW2d 243] (1971).

Moreover, once the final step of the grievance procedure is reached, paragraph F of Article VI provides that "the award of the arbitrator shall be final and binding upon the City, the Association, and the affected employee." Therefore, where plaintiff is claiming a breach of the collective bargaining agreement, he must seek relief via avenues provided by that agreement and may not proceed in court.

Plaintiff in his briefs cites a number of cases which deal with an individual's right to proceed in court against his union and his employer where the union has *wrongfully* failed to press an individual grievant's claim, and has therefore breached its duty of fair representation. Such cases are inapplicable to the case at bar, since defendants here represent the employer, not the union.

Additionally, this Court has already granted the union's motion for summary disposition on the fair representation claim.

Wherefore, defendants' motion for summary disposition is hereby granted.

The trial court entered its order granting summary disposition to the remaining defendants pursuant to MCR 2.116(C)(4) on December 3, 1985.

On December 10, 1985, plaintiff filed a motion for rehearing as to the December 3 order and a motion for delayed rehearing as to the October 18 order. The trial court heard plaintiff's motions on January 8, 1986. The trial court noted that a motion for rehearing could be filed only seven days after the entry of the order disposing of the motion. MCR 2.119(F). Because plaintiff's motion con-

cerned the unions' duty of fair representation, the trial court ruled that plaintiff's motion was untimely and, therefore, the trial court denied it. Defendant unions asked for costs under MCR 2.114(E), which the trial court granted. On January 8, 1985, the trial court entered the order denying plaintiff's motions and assessing costs of $150 in favor of defendant unions. As noted above, plaintiff appeals as of right.

Plaintiff first claims the trial court erred when it granted defendant unions' motion for summary disposition. A motion for summary disposition on the ground that there is no genuine issue of material fact tests the factual support for a party's claim. *Ambro v The American Nat'l Bank & Trust Co of Michigan,* 152 Mich App 613, 620; 394 NW2d 46 (1986). In ruling on such a motion, the court must consider pleadings, affidavits, depositions, admissions, and other documentary evidence. *Id.* Moreover, the court, while giving the benefit of reasonable doubt to the nonmoving party, must determine whether the kind of record which might be developed would leave open an issue upon which reasonable minds might differ. *Id.* This Court is liberal in finding a genuine issue of material fact. *Id.*

In *Goolsby v Detroit,* 419 Mich 651, 661; 358 NW2d 856 (1984), the Court held that a union breaches its duty of fair representation if its conduct toward a member is arbitrary, discriminatory, or in bad faith. The Court then defined arbitrary conduct as "impulsive, irrational, or unreasoned conduct" as well as "inept conduct undertaken with little care or with indifference to the interests of those affected." *Id.* at 679. The Court further ruled:

> We think the latter proscription includes, but is

not limited to, the following circumstances: (1) the failure to exercise discretion when that failure can reasonably be expected to have an adverse effect on any or all union members, and (2) extreme recklessness or gross negligence which can reasonably be expected to have an adverse effect on any or all union members. [*Id.*]

Plaintiff relies heavily on *Lowe v Hotel & Restaurant Employees Union, Local 705,* 389 Mich 123; 205 NW2d 167 (1973). In *Lowe,* the union declined to take the discharged plaintiff's case to arbitration. The union based its decision on the recommendation of an investigator predisposed against plaintiff. The investigator's recommendation was made after one telephone call. The Court held that the union breached its duty of fair representation by making no effort to settle the plaintiff's grievance and by processing it in a perfunctory manner. *Id.* at 152.

Plaintiff claims his case is similar to *Lowe.* We disagree. Plaintiff cannot dispute the language in the collective bargaining agreement which provides that promotions may only be made, in the chief's discretion, from the top three names on the promotion list. Any promise made to plaintiff, fourth on the promotion list, by Hildebrand could not be enforced under the terms of the agreement. Moreover, the unions' decision to press a grievance demanding that plaintiff, not properly in line for a promotion, be granted a promotion would not be in the interests of the unions' other members. *Id.* at 146. In addition, at the time plaintiff met with Craig, Craig showed him a previously unsuccessful grievance which made clear that a decision to promote was within the chief's discretion and that the unions could not demand that a vacant position be filled.

Still, plaintiff claims the unions had a duty to

investigate his claim. *Id.* We believe that the unions accepted plaintiff's allegations as true; however, because Hildebrand's alleged promise was made in plain violation of the collective bargaining agreement, the unions did not have to investigate further. The unions' duty was to uphold the terms of the agreement for its members. *Id.*

Similarly, the unions could not demand that the promotion list be frozen because the bargaining agreement clearly provided for its expiration after a two-year period. Regarding plaintiff's claim of an involuntary transfer, we note that this issue was not raised until after plaintiff filed his complaint with the circuit court. Hence, the unions' "refusal" to act on a claim never presented to them cannot serve as a basis for a breach of duty of fair representation claim. We agree with the trial court that the unions did not breach their duty of fair representation as defined by *Goolsby, supra,* and *Lowe, supra.*

Plaintiff next claims the trial court improperly assessed costs against him for filing a "delayed" motion for rehearing as to the October 18 order granting the unions' motion for summary disposition. Again, we disagree. The motion rules only allow a motion for rehearing to be made within seven days after the entry of the order disposing of the motion. MCR 2.119(F). Plaintiff's motion was made on December 10. The court rules do not provide for "delayed" motions for rehearing. As such, plaintiff's motion was frivolous and costs were properly imposed. MCR 2.113, 2.114.

Finally, plaintiff claims his counts alleging misrepresentation, intentional infliction of emotional distress, and promissory estoppel are "alternative pleadings" of separate tort claims under Michigan law and should have been allowed even if his action for breach of the collective bargaining

agreement was dismissed. We believe plaintiff's tort claims are factually indistinguishable and inseparable from his claim that the bargaining agreement was violated and a possible unfair labor practice claim which he did not allege. The union properly refused to pursue the grievance under the agreement. Any unfair labor practice claim would fall within the exclusive jurisdiction of the Michigan Employment Relations Commission, MCL 423.216(a); MSA 17.455(16)(a). Therefore, we find no error in precluding plaintiff from pursuing these identical claims under different names. Given this context, we agree with the trial court that any discussion of preemption is inappropriate.

Affirmed.