Saad, J.
 

 In this lawsuit brought under the Freedom of Information Act (foia),
 
 [1]
 
 and the Employee Right to Know Act (erka),
 
 [2]
 
 plaintiff, Kent County Deputy Sheriffs’ Association (hereinafter the association), sought the release of documents from defendants, Kent County Sheriff and Kent County.
 
 [3]
 
 The association wanted defendant’s internal affairs files, i.e., the records and witness statements defendant kept relating to defendant’s investigation of two deputy sheriffs disciplined for violating agency rules. In an earlier agency proceeding between the same parties, but involving different deputies, the association had sought the internal affairs files from defendant, but the Michigan Employment Relations Commission (merc) ruled that the files were exempt from disclosure under the public employment relations act (pera).
 
 [4]
 
 Because the association’s request here involved a potential grievance arbitration under a collective bargaining agreement, and an unfair labor practice under the pera if the request was wrongfully denied, defendant, relying on the merc ruling in an identical case, responded that the merc had exclusive
 
 *313
 
 jurisdiction over the matter. Defendant also argued that if the FOIA or the ERKA were to be interpreted to require disclosure, then these statutes would be in conflict with the PERA, which protects these records from disclosure and which takes precedence over the FOIA. Defendant also contends that the investigatory files are not subject to disclosure under either the FOIA or the ERKA. The trial court disagreed with defendant and ordered the release of the documents. Defendant appealed, and we reverse.
 

 I NATURE OF THE CASE
 

 The PERA governs public sector labor law, and its provisions have been held to take precedence over other conflicting laws to ensure uniformity, consistency, and predictability in the critically important and complex field of public sector labor law.
 
 Rockwell v Crestwood School Dist Bd of Ed,
 
 393 Mich 616, 629; 227 NW2d 736 (1975). The MERC is the sole state agency charged with the interpretation and enforcement of this highly specialized and politically sensitive field of law.
 
 Id.,
 
 630; MCL 423.216; MSA 17.455(16).
 

 “A major purpose of the foia is to enable the general public to obtain full and complete information regarding governmental decision making.”
 
 Herald Co v Bay City,
 
 228 Mich App 268, 286; 577 NW2d 696 (1998). A party claiming that material is exempt from disclosure under the FOIA bears the burden of proving that one of the statutory exemptions applies.
 
 Id.
 
 The FOIA has been interpreted broadly to allow public access, and its exceptions are interpreted narrowly so its disclosure provisions are not undermined.
 
 Lepp v Cheyboygan Area Schools,
 
 190 Mich App 726, 729; 476
 
 *314
 
 NW2d 506 (1991);
 
 Bradley v Saranac Community Schools Bd of Ed,
 
 455 Mich 285, 293; 565 NW2d 650 (1997).
 

 In the labor law arena, unions frequently seek information and materials from management that the union asserts are necessary to bargain collectively (regarding, for example, wages, overtime, and pensions). In the private sector, under the federal Labor Management Relations Act (lmra), 29 USC 141
 
 et seq.,
 
 the National Labor Relations Board (nlrb) has exclusive jurisdiction to resolve unfair labor practice disputes. 29 USC 160. Unless the information is protected from disclosure, an employer’s failure to comply with the union’s request for information and documents constitutes an unfair labor practice—a failure to bargain in good faith.
 
 General Motors Corp v NLRB,
 
 700 F2d 1083, 1088 (CA 6, 1983); 29 USC 158(a)(5). See also
 
 AFSCME Local 2343 v Federal Labor Relations Authority,
 
 330 US App DC 136; 144 F3d 85 (CA DC, 1998);
 
 NLRB v United States Postal Service,
 
 888 F2d 1568, 1570 (CA 11, 1989). Analogously, in Michigan’s public sector, the employer’s failure to release nonprotected information constitutes an unfair labor practice under the pera, as interpreted and enforced by the merc. MCL 423.210(l)(e); MSA 17.455(10)(1)(e). Questions of what information is vital to bargaining—and thus subject to disclosure—and what information is proprietary and confidential—and thus protected from disclosure—go to the heart of the collective bargaining and grievance arbitration law of labor management relations. See
 
 Detroit Edison Co v NLRB,
 
 440 US 301, 303; 99 S Ct 1123; 59 L Ed 2d 333 (1979);
 
 NLRB v Truitt Mfg Co,
 
 351 US 149; 76 S Ct 753; 100 L Ed 1027 (1956).
 

 
 *315
 
 In a dispute that involved the same parties and the precise issue now before us, the MERC determined that defendant law enforcement agency was not obliged to provide the association with copies of internal affairs records relating to association members’ alleged misconduct.
 
 Kent Co v Kent Co Deputy Sheriffs Ass’n,
 
 1991 MERC Lab Op 374; 4 MPER 194 (1991). Recently, the MERC reiterated this position in
 
 Battle Creek v Police Officers Labor Council,
 
 12 MPER 25 (1998), which also involved an attempt by a police officers’ union to obtain internal affairs records. In an apparent attempt to avoid an unfavorable ruling from the MERC, the association here sought to get the information by using the foia. Therefore, the following issue of first impression is raised by this appeal: Does a public sector labor union’s FOIA request for information from a public sector employer create an unfair labor practice issue that falls within the merc’s exclusive jurisdiction? We answer yes and hold that the circuit court lacks jurisdiction over the association’s FOIA and erka action. We also hold that the pera, as the dominant law in public sector labor relations, precludes the association’s FOIA and ERKA actions. Furthermore, we conclude that the documents are not subject to disclosure under the foia.
 

 n. FACTS AND PROCEEDINGS
 

 The association and defendant, a public employer, are parties to a collective bargaining agreement, subject to the PERA. The association represents the deputy sheriffs employed by defendant, including corrections officers John Biddington and Rodney Perdue. This case arose when the sheriff disciplined officers Biddington and Perdue for alleged misconduct. Bid
 
 *316
 
 dington was dismissed after an off-duty incident in which he propositioned a woman in a restaurant to perform sexual acts for money. Perdue was suspended for twelve days without pay for using excessive force against a jail inmate.
 

 Pursuant to the collective bargaining agreement, the officers filed grievances. Anticipating that Per-due’s grievance would proceed to arbitration, the association requested that defendant provide it with a copy of the internal affairs investigation file. This file consisted of documents defendant compiled in the course of investigating the charges against Biddington and Perdue, and presumably included statements by other officers with knowledge of the incidents. Defendant denied the request, asserting that it had no obligation to release the documents. Defendant relied on a previous MERC ruling, in which the merc decided the precise issue between these parties in an unfair labor practice proceeding.
 
 Kent Co v Kent Co Deputy Sheriffs Ass’n, supra.
 
 There, the MERC determined that “internal investigations conducted for the purpose of determining whether or not there was employee misconduct, fall within the confidential information exception,” 1991 MERC Lab Op 377; 4 MPER 196 to an “[ejmployer’s general obligation to provide information that is relevant and necessary to the performance of the [u]nion’s duty as the collective bargaining representative,” 1991 MERC Lab Op 376; 4 MPER 195. Consequently, defendant’s refusal to release the documents did not constitute an unfair labor practice.
 

 Having already lost on this issue under the pera before the MERC, the association tried another way to obtain the investigation documents, this time through
 
 *317
 
 an foia and erka request for all reports concerning disciplinary action for both Perdue and Biddington. Although defendant released certain documents in response to this request, it maintained that the remaining records were not subject to disclosure under either the foia or the erka. The association filed suit, alleging that defendant’s refusal to release the internal affairs records violated the FOIA and the erka, as well as the Michigan Constitution’s Fair and Just Treatment Clause, Const 1963, art 1, § 17. The association stated in its complaint that it needed the grievants’ statements, the witnesses’ identities and statements, and the medical reports and other documents in order to
 
 “prepare for arbitration”
 
 (emphasis supplied).
 

 Defendant contended that the association’s foia action to obtain documents unavailable through the MERC was a thinly disguised claim of an unfair labor practice and attempt to circumvent the merc’s exclusive jurisdiction. Defendant further argued that neither the foia, the pera, nor the constitution required release of these documents. Alternatively, defendant argued that if the foia or the erka did, in fact, mandate disclosure, then these statutes would be in conflict with the pera, which protected the confidentiality of these records and which took precedence over the foia and the erka.
 

 The trial court rejected defendant’s arguments and ordered defendant to release the documents pursuant to the foia. Defendant now appeals. By order of this panel, execution of the trial court’s order has been stayed pending the outcome of this appeal.
 

 
 *318
 
 HI. ANALYSIS
 

 A. THE MERC’S EXCLUSIVE JURISDICTION OVER UNFAIR LABOR PRACTICE CLAIMS
 

 The crux of defendant’s argument is that the association’s FOIA claim is, in substance, a claim that defendant committed an unfair labor practice by refusing to disclose records the association allegedly sought to prepare for arbitration. Raising an issue of first impression in this Court, defendant maintains that the MERC has exclusive jurisdiction over unfair labor practice claims and that the association cannot bestow the circuit court with jurisdiction by disguising the unfair labor practice claim as a foia or erka claim. We agree. Because a public employer’s response to a union’s request for documents and other information is properly characterized as an unfair labor practice issue, the MERC has exclusive jurisdiction over this matter, and the trial court has no jurisdiction to consider the matter as a foia or erka claim.
 

 Our state’s constitution provides that the “legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service.” Const 1963, art 4, § 48. Our Legislature exercised this authority by enacting the pera. Our Supreme Court has “consistently construed the pera as the
 
 dominant
 
 law regulating public employee labor relations.”
 
 Rockwell, supra,
 
 393 Mich 629 (emphasis added). The pera charges the MERC with jurisdiction to remedy unfair labor practices. MCL 423.216; MSA 17.455(16). Accordingly, our Supreme Court has held:
 

 Merc
 
 alone
 
 has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair
 
 *319
 
 labor practices and misconduct under the pera.
 
 [Rockwell, supra,
 
 630 (emphasis added).]
 

 Therefore, if defendant’s refusal to release documents pertaining to the pending grievance would, if wrongful, be an unfair labor practice, then the matter is within the merc’s exclusive jurisdiction.
 

 Unquestionably, the association’s claim that defendant should release the investigation files raises an unfair labor practice issue. It is a thoroughly entrenched principle of labor law that a union is entitled to receive from the employer information and documents the union needs to carry out its duties to represent its members.
 
 Detroit Edison Co, supra,
 
 440 US 301, and
 
 Truitt Mfg, supra,
 
 351 US 149. Because “one of the duties of a labor union is the processing of grievances,” the union has a qualified right to information needed in the grievance process.
 
 Resorts Int’l Hotel Casino v NLRB,
 
 996 F2d 1553, 1556 (CA 3, 1993). Accordingly, an employer’s failure to provide the union with the information it needs to evaluate and process grievances may constitute an unfair labor practice.
 
 General Motors, supra,
 
 700 F2d 1088. See also
 
 AFSCME Local 2343, supra,
 
 330 US App DC 136, and
 
 United States Postal Service, supra,
 
 888 F2d 1570. Specifically, the employer’s failure to provide necessary information constitutes a refusal to bargain collectively with the employees’ representative—an unfair labor practice under both the National Labor Relations Act and the pera.
 
 General Motors, supra;
 
 29 USC 158(a)(5); MCL 423.210(1)(e); MSA 17.455(10)(1)(e). Consistent with these principles, Michigan public sector unions appear before the MERC to challenge as unfair labor practices employers’ refusal to provide information. See
 
 Kalamazoo City
 
 
 *320
 

 Ed Ass’n v Kalamazoo Public Schools,
 
 406 Mich 579, 590; 281 NW2d 454 (1979), and
 
 Crestwood Ed Ass’n v Employment Relations Comm,
 
 71 Mich App 347, 353; 248 NW2d 266 (1976). Exercising its proper jurisdiction over this matter, the MERC has determined that confidentiality concerns outweigh a union’s need for law enforcement records pertaining to internal investigation of officers’ misconduct.
 
 Battle Creek, supra; Kent Co, supra.
 

 Defendant is thus correct in its assertion that the association’s claim is, in substance, an unfair labor practice claim. The association does not deny that defendant’s conduct raises a question of unfair labor practices. However, it maintains that the merc’s jurisdiction over the unfair labor practice does not affect its statutory rights to seek the documents under the foia. and the erka. We disagree. It is well established in Michigan labor law that the merc’s exclusive jurisdiction forecloses actions under other statutes or legal theories where the alleged wrongdoing raises an unfair labor practice issue.
 

 In
 
 Rockwell, supra,
 
 our Supreme Court set forth the broad parameters of the merc’s exclusive jurisdiction over unfair labor practice claims. In
 
 Rockwell,
 
 public school teachers who had been discharged for striking claimed that they were entitled to a pretermination hearing under the teachers’ tenure act
 
 [5]
 
 and the Due Process Clause.
 
 Id.,
 
 393 Mich 624-625. The school board maintained that the teachers were entitled only to a posttermination hearing, in accordance with § 6 of the pera.
 
 Id.
 
 The Court ruled that the teachers’ rights with regard to discipline for ille
 
 *321
 
 gal striking was governed by the PERA, and that the appropriate forum for the dispute was the MERC:
 

 This Court has consistently construed the pera as the dominant law regulating public employee labor relations. . . .
 

 The teachers’ tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. . . .
 

 The State Tenure Commission has no authority to entertain an unfair labor practice charge against a school board.
 

 Its jurisdiction and administrative expertise is limited to questions traditionally arising under the teachers’ tenure act.
 

 Merc alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the pera.
 
 [Rockwell, supra,
 
 393 Mich 629-630 (emphasis added).]
 

 In sum, any complaint by the teachers that they had been wrongfully discharged for striking was, in substance, a complaint of an unfair labor practice. Accordingly, the teachers’ remedy could come only through the PERA, as administered by the MERC. Applying
 
 Rockwell
 
 here, we find that the association’s foia and erka claims are on the same footing as the tenure act claims.
 

 Similarly, in
 
 Lamphere Schools v Lamphere Federation of Teachers,
 
 400 Mich 104, 107; 252 NW2d 818 (1977), a school district sued a teachers’ union in tort, alleging monetary damages incurred during a peaceful, but illegal, strike. The Supreme Court held that this suit was not legally tenable:
 

 
 *322
 
 First and foremost, after a careful study of both the specific language and the history of the pera, we are convinced that the Legislature intended the pera to occupy the public labor relations field completely in this context. Accordingly, except for the historical equitable relief of injunction, the remedies of discipline-discharge provided for under § 6 of the pera are intended to be the sole and exclusive remedies available to a school district in dealing with a peaceful strike by a teachers’ federation.
 
 [Id.]
 

 Reviewing the language of the pera’s title, the Court found it salient that one purpose of the act was to “prescribe means of enforcement and penalties for the violation of the provisions of this act.”
 
 Id.,
 
 110-111, quoting 1947 PA 336, as amended by 1965 PA 379. The Court concluded that “it require[d] little extrapolation to ascertain” that the Legislature “intended to proscribe strikes by public employees and to prescribe the means of enforcement and penalties for such strikes.”
 
 Id.,
 
 111. The plaintiff school district contended that the pera’s remedies were not exclusive, because the pera did not provide school districts with any remedy against teachers unions “which foment teachers’ strikes.”
 
 Id.
 
 The Court rejected this argument because the pera provided for “exclusive, after-the-fact statutory remedies as to both teachers
 
 and
 
 their federations for participation in such strikes,” albeit not monetary damages.
 
 Id.,
 
 111-112. The Court held that the school district could seek no remedies other than those provided by the PERA.
 
 Id.,
 
 117.
 

 Furthermore, the Court in
 
 Lamphere Schools
 
 reiterated the
 
 Rockwell
 
 Court’s conclusion that “ ‘merc
 
 alone
 
 has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the
 
 *323
 
 pera.’ ”
 
 Id.,
 
 118, quoting
 
 Rockwell, supra,
 
 630 (emphasis added in
 
 Lamphere Schools').
 
 The
 
 Lamphere Schools
 
 Court held that the plaintiff’s tort action against the teachers union was contrary to the merc’s exclusive jurisdiction over unfair labor practice claims:
 

 If this Court permitted plaintiff school district to pursue any of the three civil tort actions pled (causing teachers to breach a duty, tortious interference with existing individual contractual relationships, civil conspiracy), such a result would necessarily circumvent the authority of merc to determine charges of unfair labor practices. This becomes apparent since the defendant federations, as representatives of the teachers, would inevitably defend proposed civil actions by alleging unfair labor practices. Then the determination of whether or not an unfair labor practice occurred would inexorably fall to the forum in which the tort action was brought—the circuit court.
 
 [Lamphere Schools, supra,
 
 118-119.]
 

 The Court further commented on the policy implications of eroding the merc’s jurisdiction in this context:
 

 The circuit courts would be forced to make the same unfair labor practice determinations as to the federations heretofore exclusively reserved to merc. The unpleasant specter of the courts and merc sharing this authority, combined with the very real possibility of conflicting decisions, could only further confuse labor relations in the public sector.
 
 [Id.,
 
 119.]
 

 These policy considerations are compelling here. The MERC, as the state agency charged with enforcement of our state’s public sector labor law, has established a confidentiality exception to the employer’s obligation to disclose, and it has determined that this exception covers law enforcement internal investiga
 
 *324
 
 tion files.
 
 Battle Creek, supra; Kent Co, supra.
 
 If this category of unfair labor practice claims could be recast as foia or ERKA claims, the
 
 Lamphere Schools
 
 Court’s “unpleasant specter” would be realized, and conflicting decisions would muddle the field of public sector labor law in Michigan. The pera has been given precedence over other laws to ensure a consistent and coordinated body of public sector labor law in this state. Consistent with this objective, the merc is the exclusive agency that inteiprets these complex and balanced interests of labor and management. To allow this delicate balance to be upset by conflicting decisions from trial courts “could only further confuse labor relations in the public sector.”
 
 Lamphere Schools, supra,
 
 119.
 

 In another relevant case,
 
 Ramsey v Pontiac,
 
 164 Mich App 527; 417 NW2d 489 (1987), the plaintiff, a police officer, alleged that his superiors promised him a promotion. In reliance on this promise, the plaintiff resigned a desirable position in order to gain the road patrol experience that was required for the promotion.
 
 Id.,
 
 529. The promotion never came.
 
 Id.,
 
 531. Because the plaintiff’s union representative did not believe that the plaintiff had grounds for a grievance, the plaintiff filed his own individual grievance, which was denied.
 
 Id.,
 
 531-532. The plaintiff then filed a lawsuit against the city, the chief of police, the mayor, and the unions, alleging breach of contract with respect to the promotion offer, breach of the collective bargaining agreement with respect to the union’s failure to pursue a grievance, misrepresentation, promissory estoppel, and intentional infliction of emotional distress.
 
 Id.,
 
 532. After rejecting the plaintiff’s claims of breach of contract and breach of the
 
 *325
 
 duty of fair representation, the Court rejected his claims of misrepresentation, intentional infliction of emotional distress, and promissory estoppel:
 

 We believe plaintiffs tort claims are
 
 factually indistinguishable and inseparable
 
 from his claim that the bargaining agreement was violated and a possible unfair labor practice claim which he did not allege. The union properly refused to pursue the grievance under the agreement. Any unfair labor practice claim would fall within the exclusive jurisdiction of the [merc]. Therefore,
 
 we find no error in precluding plaintiff from pursuing these identical claims under different names. [Id.,
 
 539 (emphasis added).]
 

 As with
 
 Rockwell
 
 and
 
 Lamphere Schools,
 
 we find the plaintiffs claim in
 
 Ramsey
 
 to be analogous to the association’s foia/erka claims here. The association’s contention that it is entitled to the internal affairs files under these statutes is “factually indistinguishable and inseparable” from its claim that it needs the documents to pursue the officers’ grievances. Accordingly, the merc’s exclusive jurisdiction precludes the foia/erka lawsuit.
 

 Clearly, the pera is the exclusive remedy for any unfair labor practice charge, and the MERC has exclusive jurisdiction to adjudicate such charges. A plaintiff cannot obtain another remedy by framing the unfair labor practice as a different species of common-law or statutory claim invoking the jurisdiction of a different tribunal. If the allegations forming the plaintiff’s cause of action implicate an unfair labor practice question, the claim is barred by the merc’s exclusive jurisdiction. Here, the association’s claim that defendant must provide the internal affairs file raises a question of defendant’s obligation to provide the union with requested information. MCL
 
 *326
 
 423.210(1)(e); MSA 17.455(10)(1)(e). Because the association’s claim, if meritorious, clearly constitutes an unfair labor practice by the employer, its resolution falls within the merc’s exclusive jurisdiction. The trial court therefore erred in ordering defendant to release these documents.
 

 We reject the association’s contention that
 
 Local 312 of the AFSCME, AFL-CIO v Detroit,
 
 207 Mich App 472; 525 NW2d 487 (1994), requires a contrary result. There, the plaintiff union prevailed in a circuit court foia action against the defendant employer.
 
 Id.,
 
 473. On appeal, this Court considered the narrow issue whether the union qualified as a “person” entitled to seek public records under the foia.
 
 Id.
 
 The Court merely stated that there was “no sound policy reason for distinguishing between persons who are involved in litigation-type proceedings and those who are not.”
 
 [6]
 

 Id.
 
 The opinion makes no reference at all to the issue of the merc’s exclusive jurisdiction over unfair labor practice claims, and thus the opinion has no precedential value with regard to this issue. MCR 7.215(H)(1). Because the question in
 
 Local 312
 
 is not the same as the question here, the doctrine of stare decisis does not apply.
 
 [7]
 

 Sizemore v Smock,
 
 430 Mich 283, 291, n 15; 422 NW2d 666 (1988).
 

 
 *327
 
 B. THE PERA TAKES PRECEDENCE OVER THE FOIA
 

 Were we to find that the circuit court has jurisdiction to adjudicate this matter, we would nonetheless reverse the trial court’s judgment on the alternative ground that the pera’s dominance in the field of labor relations precludes the association’s FOIA action.
 
 [8]
 
 The pera’s remedies for pera violations are exclusive, and aggrieved parties to labor disputes are not entitled to relief through other statutes or common-law theories. See
 
 Jackson Fire Fighters Ass’n, Local 1306, IAFF, AFL-CIO v City of Jackson (On Remand),
 
 227 Mich App 520, 525; 575 NW2d 823 (1998);
 
 Rockwell, supra; Lamphere Schools, supra.
 

 In
 
 Rockwell, supra,
 
 teachers terminated for illegal striking challenged their termination under the teachers’ tenure act. Our Supreme Court rejected this claim because the striking teachers’ rights were delineated by the PERA, which took precedence over the teachers’ tenure act and precluded the action under the latter statute:
 

 The teachers’ tenure act was not intended, either in contemplation or design, to cover labor disputes between school boards and their employees. The 1937 Legislature in enacting the teachers’ tenure act could not have anticipated collective bargaining or meant to provide for the resolution
 
 *328
 
 of labor relations disputes in public employment.
 
 [Rockwell, supra,
 
 393 Mich 630.]
 

 Accordingly, in the context of a labor dispute over an illegal strike, the teachers could not derive from the tenure act any rights not afforded by the pera.
 

 Continuing its analysis, the
 
 Rockwell
 
 Court commented that the pera’s public policy goal of uniformity in the law of public sector labor relations would be thwarted if the teachers were permitted to seek relief under the tenure act:
 

 A construction of the statutes providing uniform treatment of all public employee labor relations questions is more likely to effect a sound and expeditious resolution of labor disputes. Requiring hearings under both the teachers’ tenure act and the Michigan labor relations statutes, with review of the former by the circuit court and of the latter by the Court of Appeals,
 
 could result in competing claims and conflicting adjudications with untoward and costly delay. [Id.,
 
 631.]
 

 Applied here, the
 
 Rockwell
 
 analysis leads to the conclusion that the association cannot assert the foia to obtain materials not discoverable under the pera. The foia, like the teachers’ tenure act, was never intended to resolve management-labor disputes and therefore cannot serve as a means of circumventing the pera. Furthermore, allowing unions the option of seeking grievance-related information under either the pera or the FOIA would lead to the conflicting results and uncertainty the
 
 Rockwell
 
 Court sought to avoid.
 

 Processing grievances is undoubtedly among a union’s most important functions. The exchange of information during this process is crucial to the dis
 
 *329
 
 position of grievance claims. Issues over release of documents are hotly contested: the union wants access to all existing information; the employer wants to protect confidential information from disclosure. The dispute is more contentious when a union seeks internal affairs files from a law enforcement agency. The agency’s interest in confidentiality is acute, because disclosure will discourage officers in the future from revealing information concerning another officer’s misconduct. In short, controversies over the exchange of information lie at the very heart of labor law and should therefore be governed solely by the PERA, which was specifically designed to address and balance all the competing interests in labor-management disputes.
 

 In sum, the Legislature intended the pera to be the dominant law of public sector labor-management relations in Michigan. The issue of information exchange during grievance arbitration is central to labor-management relations. Accordingly, controversies over information disclosure can be resolved only under the pera, not under the general FOIA provisions.
 
 [9]
 

 
 *330
 
 C. EXEMPTION OF RECORDS FROM DISCLOSURE
 

 Alternatively, defendant claims that it did not violate the FOIA, the erka, or the Michigan Constitution, Const 1963, art 1, § 17, and, therefore, was entitled to summary disposition under MCR 2.116(C)(10). We agree.
 

 The internal investigation documents requested by the association are exempt from disclosure under the FOIA exemption for certain public records of a law enforcement agency. MCL 15.243(1)(t); MSA 4.1801(13)(1)(t). The FOIA requires the disclosure of all public records that are not specifically exempted in § 13 of the act, MCL 15.243; MSA 4.1801(13).
 
 Lepp v Cheyboygan Area Schools, supra,
 
 190 Mich App 729. Exemptions from the foia are to be narrowly construed, and the burden of proof is on the public body claiming an exemption.
 
 Bradley v Saranac Community Schools Bd of Ed, supra,
 
 455 Mich 293. Whether records fall within one of the statutory exemptions is a question of law, which we review de novo.
 
 Id.
 

 Defendant claims an exemption under subsection 1(t)(ix) of § 13 of the foia, MCL 15.243(1)(t)(ix); MSA 4.1801(13)(1)(t)(ix), which addresses law enforcement agency records and provides that a public body may exempt from disclosure personnel records of a
 
 *331
 
 law enforcement agency unless the public interest in disclosure outweighs the public interest in nondisclosure.
 

 Here, the trial court erroneously concluded that the investigation records were not exempt from disclosure under subsection 13(1)(t)(ix) of the FOIA. Internal investigation records of a law enforcement agency may be exempted from disclosure as personnel records under subsection 13(1)(t)(ix). MCL 15.243(1)(t)(ix); MSA 4.1801(13)(1)(t)(ix);
 
 Newark Morning Ledger Co v Saginaw Co Sheriff,
 
 204 Mich App 215, 223; 514 NW2d 213 (1994).
 

 Once particular records qualify under a listed exemption for law enforcement agency records, the remaining inquiry is whether “the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance.” MCL 15.243(1)(t); MSA 4.1801(13)(l)(t);
 
 Newark Morning Ledger, supra,
 
 224. Defendant sufficiently established that public interest favored nondisclosure. The affidavit of the undersheriff justified confidentiality on these grounds:
 

 1. Internal investigations are inherently difficult because employees are reluctant to give statements about the actions of fellow employees.
 

 2. If their statements would be a matter of public knowledge they might refuse to give any statements at all or be less than totally forthcoming and candid.
 

 3. Also, disclosure could be detrimental to some employees.
 

 4. Public disclosure of records relating to internal investigations into possible employee misconduct would destroy or severely diminish the Sheriff Department’s ability to effectively conduct such investigations.
 

 
 *332
 
 We agree that these reasons soundly establish that the public interest favors nondisclosure of these records. The association fails to persuade us that the public interest in meaningful arbitration of grievances favors disclosure. Instead, we agree with the statement of the hearing officer in
 
 Kent Co, supra,
 
 4 MPER 197, that “requiring prearbitration disclosure of witness statements would not advance the grievance and arbitration process, on the ground that employee witnesses might be coerced or intimidated to change their testimony or not testify at all.”
 

 The trial court did not reach the questions of disclosure under the ERKA or Const 1963, art 1, § 17. We decline to address these issues because they are unnecessary for our review and because the record relating to these issues is not fully developed.
 

 Reversed.
 

 [1]
 

 MCL 15.231
 
 et
 
 seq.; MSA 4.1801(1)
 
 et seq.
 

 [2]
 

 MCL 423.501
 
 et seq.;
 
 MSA 17.62(1)
 
 et seq.
 

 [3]
 

 Both defendants, Kent County Sheriff and Kent County, will be referred to in the singular as defendant.
 

 [4]
 

 MCL 423.201
 
 et seq.;
 
 MSA 17.455(1)
 
 et seq.
 

 [5]
 

 MCL 38.71
 
 et seq.;
 
 MSA 15.1971
 
 et seq.
 

 [6]
 

 After this Court decided
 
 Local 312,
 
 the Legislature amended the foia by providing that “[rjecords or information relating to a civil action in which the requesting party and the public body are parties” are exempt from disclosure. MCL 15.243(w); MSA 4.1801(13)(w). Thus, persons involved in litigation are no longer entitled to use the foia as a pretrial discovery procedure.
 

 [7]
 

 Furthermore, the page-and-a-half decision includes only a cursory statement of fact that is insufficient to establish that an unfair labor practice question was ever raised or even implicated.
 

 [8]
 

 Though we need not decide this question, we seriously question the proposition that the foia applies to a public sector union’s request for information from a public sector employer whose employees the union represents. We believe that the foia was never intended to apply to the complex field of labor-management relations in the public sector. Rather, the foia was designed to help the citizen learn more about his government and to subject government to public scrutiny. Allowing a union to use the foia to obtain information for labor arbitration when that kind of information has been previously held to be nondisclosable by the merc would undermine the public policy and purpose of both the foia and the pera.
 

 [9]
 

 The association places great emphasis on this Court’s conclusory statement in
 
 Local 312, supra,
 
 207 Mich App 473, that “[t]he pera and the foia are not conflicting statutes such that the pera would prevail over the foia.” The association’s reliance, however, is misplaced, -because
 
 Local 312
 
 is not factually relevant here. The
 
 Local 312
 
 opinion gives only a cursory discussion of facts and legal arguments, leaving us unable to ascertain the exact nature of the puiported conflict in that case. Here, however, the nature of the potential conflict between the pera and the foia is clear: the documents the association seeks under the foia are not subject to disclosure under the pera as that statute has been construed by the merc.
 
 Battle Creek, supra, Kent Co, supra.
 
 See
 
 Grandville Municipal Executive Ass’n v Grandville,
 
 453 Mich 428, 437; 553 NW2d 917 (1996), holding that this Court affords great deference to the merc’s interpretation of the pera. Furthermore, the Court’s reasoning in
 
 Local 312
 
 is of questionable validity following the 1996 amendments of the foia. The
 
 Local 312
 
 Court drew an analogy between the labor-management dispute over
 
 *330
 
 information disclosure and a civil lawsuit discovery dispute. The Court “decline[d] [the employer’s] invitation to create an foia exception based on the status of the person requesting public documents” because it found “no sound policy reason for distinguishing between persons who are involved in litigation-type proceedings and those who are not.”
 
 Local 312, supra,
 
 473. However, § 13 of the foia now exempts from disclosure “[r]ecords or information relating to a civil action in which the requesting party and the public body are parties.” MCL 15.243(w); MSA 4.1801(13)(w).